Dustin W. Manwaring
MILESTONE LAW FIRM
dustin@milestonelaw.com
SBN 8648
1469 W. Quinn Road
Pocatello, ID 83202
Tel: 208.252.5295
Fax: 858.228.1776

Attorney for Plaintiff

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN DOE, an individual formerly under 18 Years of Age, | Case No. CV-2012-589 |
| *Plaintiff* | |
| vs. | |
| BLACKFOOT SCHOOL DISTRICT #55, a political subdivision, BLACKFOOT HIGH SCHOOL, John Does 2-XX, SCOTT CRANE, in his individual and official capacities, BLAINE MCINELLY, in his individual and official capacities, COUNTY OF BINGHAM, a political subdivision, J. SCOTT ANDREW, in his individual and official capacities, RANDY W. SMITH, in his individual and official capacities, JARED RICKS, in his individual and official capacities, CITY OF BLACKFOOT, a political subdivision, R. DAVID MOORE, in his individual and official capacities KURT ASMUS, in his individual and official capacities PAUL NEWBOLD, in his individual and official capacities, JUSTIN DANCE, in his individual and official capacities, | **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| *Defendants.* | |

COMES NOW, the Plaintiff, JOHN DOE, by and through his attorney, Dustin W. Manwaring of Milestone Law Firm and hereby states, alleges and complains as follows:

## ALLEGATIONS COMMON TO ALL CLAIMS

### Parties

1.   Plaintiff John Doe is an adult male individual, formerly a citizen and resident of the State of Idaho and presently a citizen and resident of a state other than Idaho. The Plaintiff's identity is not pleaded in order to protect the identity of the Plaintiff because the Plaintiff was a minor when the events giving rise to this Complaint occurred and culminated in a state court proceeding involving allegations of violent crimes and a felony sex crime against the Plaintiff, and was the subject matter of widespread media attention. The identity of the Plaintiff will be made known to the Defendants by separate communication.

2.   Defendant Blackfoot School District #55, is a political subdivision of the State of Idaho, chartered for the primary purpose of providing k-12 public education, with its principal place of business located at 270 East Bride Street, Blackfoot, Idaho 83221.

3.   Defendant Scott Crane, was at all times material herein a resident of the County of Bingham, State of Idaho and was the Superintendant of Blackfoot School District #55.

4.     Defendant Blaine McInelly, was at all times material herein a resident of the County of Bingham, State of Idaho and was the principal of Blackfoot High School.

5.     Defendant County of Bingham, is a political subdivision of the State of Idaho with its principal place of business located at 501 North Maple Street, Blackfoot, Idaho 83221.

6.     Defendant J. Scott Andrew, was at all times material herein a resident of the County of Bingham, State of Idaho, and the elected prosecuting attorney for Bingham County, Idaho.

7.     Defendant Randy W. Smith, was at all times material herein a resident of the County of Bingham, State of Idaho, and the chief deputy prosecuting attorney for Bingham County, Idaho.

8.     Defendant City of Blackfoot, is a political subdivision of the State of Idaho with its principal place of business located at 157 N. Broadway, Blackfoot, Idaho 83221.

9.     Defendant  R. David Moore, was at all times material herein a resident of the County of Bingham, State of Idaho, and the chief of police of the Blackfoot Police Department.

10.   Defendant Kurt Asmus, was at all times material herein a resident of the County of Bingham, State of Idaho, and a captain of the Blackfoot Police Department.

11.   Defendant Paul Newbold, was at all times material herein a resident of the County of Bingham, State of Idaho, and a detective working for the Blackfoot Police/Bingham County Sheriff Joint Detective Unit.

12.   Defendant Justin Dance, was at all times material herein a resident of the County of Bingham, State of Idaho, and a detective working for the Blackfoot Police/Bingham County Sheriff Joint Detective Unit.

**Facts**

13.   On or about September 21, 2010, Blackfoot High School teacher Trevor Clayson overheard students W.H. and G.M. discussing something referred to as hazing or "shooshing" and reported the conversation to Principal McInelly. High school guidance counselor, Vicki Johnson, and student resource officer (SRO) Simper were also notified on or about the same day.

14.   SRO Simper contacted Sergeant Croft and Detective Newbold. Newbold advised that the Joint Detective Unit would be handling the case. Detectives Newbold and Justin Dance were the primary investigators involved.

15.   Witness A.L. was interviewed[1] (specific date unknown) by detectives and was provided with the names of potential perpetrators including John Doe. A.L. stated, "Yah, he would do some stuff too" and later said,

_____

[1] As early as June 2010, A.L. reported to Principal McInelly at least one incident of harassment by fellow baseball and basketball teammates. Upon A.L.'s request, McInelly supported A.L.'s decision to transfer schools before the start of the 2010-2011 school year. John Doe's name was not raised in the June 2010 report.

"probably like [John Doe] was holding me too."

16.   On or about November 19, 2010, witness S.C. was interviewed by Detective Paul Newbold and two other officers. When asked to identify those involved, S.C. named John Doe and three other basketball teammates, further providing that it happened "once to me" in the "locker room after practice" but "...can't tell you a date" and he was "...not sure if before or after Christmas." S.C. also declared that he was "not sure who held me down" and was "not sure who was doing what."

17.   On or about November 22, 2010, Detectives Paul Newbold and Justin Dance interviewed alleged victim B.H. about "shooshing" and B.H. described shooshing in the following ways:

 "...mostly a joke to everybody";

"I mean they didn't really do anything bad";

"I wasn't traumatized or anything";

"I'm just kind of baffled that it's even being brought up right now";

"They didn't shove anything in there";

"...wedgy, but nothing else";

"...fake fingering me";

"Nothing hard, nothing bad or anything";

"No hitting";

"I don't have a problem with it—I almost forgot about it actually".

18.   Detective Newbold was the first person to suggest John Doe's name during the interview with B.H. and B.H. never specifically responded to John

Doe's name but later when specifically asked if he knew which person was touching him B.H. replied, "Not for sure".

19.   Then, detectives interviewed B.H. for a second time (specific date unknown) and when asked whether John Doe was involved, B.H. simply responded, "Not that I can remember." Further, B.H. denied any penetration and again reiterated that his teammates were "Never trying to hurt me or anything" and they were "still friends."

20.   In the face of the aforementioned witness accounts, on or about December 2, 2010, Plaintiff John Doe, a minor under 18 years of age at the time, was served with a juvenile petition in the District Court of the Seventh Judicial District of the State of Idaho, in and for the County of Bingham, Magistrate Division, alleging the following offense to have been committed:

COUNT 1:  BATTERY, a Misdemeanor, I.C. § 18-903(b);

COUNT 2:  BATTERY, a Misdemeanor, I.C. § 18-903(b);

COUNT 3:  BATTERY, a Misdemeanor, I.C. § 18-903(b);

COUNT 4:  FALSE IMPRISONMENT, a Misdemeanor, I.C. § 18-2901;

COUNT 5:  FALSE IMPRISONMENT, a Misdemeanor, I.C. § 18-2901;

COUNT 6:  FALSE IMPRISONMENT, a Misdemeanor, I.C. § 18-2901;

COUNT 7:  PRINCIPAL TO A FELONY (FORCIBLE SEXUAL PENETRATION BY USE OF FOREIGN OBJECT), a Felony, I.C. §§ 18-6608 and 18-204.

21.   A.L. was listed as the victim in Counts 1 and 4.  S.C. was listed as the victim in Counts 2 and 5. B.H. was listed as the victim in Counts 3, 6 and 7.

22.   On or about December 2, 2010, four other former Blackfoot High

School students, Logan Chidester, Anthony Clarke, Tyson Katseanes, and Nathan Walker were also charged with felony forcible sexual penetration with a foreign object, after misdemeanor charges for false imprisonment, principal to battery, and battery were filed on December 1, 2010.

23.   Detectives Newbold and Dance and Deputy Prosecutor Jared Ricks did not have any reasonable basis to believe a crime had occurred since relevant details including time, place, and who actually delivered the harmful or offensive contact were unknown and, at best, only generalized by any prospective victim. The only evidence involving John Doe that detectives and prosecutors had when the petition was filed were those witness interviews as described above, which all clearly manifest a lack of reasonable probability that Doe committed any crime, particularly any felony.

24.   John Doe was never interviewed by detectives about his alleged involvement in hazing or other bullying at Blackfoot High School. Similarly, none of the other eventual "hazing" defendants or their families were ever interviewed prior to charges being filed.

25.   On or about December 7, 2010, Blackfoot School District #55 issued a patently false press release providing in relevant part that, "while reviewing bullying and harassment policies this Fall, students at Blackfoot High School came forward, alleging they were victims of hazing." This statement is simply untrue as there were no students that came forward as a result of the District's review of its policies. Rather, in John Doe's case, when S.C. was interviewed he

initially provided Doe's name to police. Further, police never questioned S.C.'s motive for mentioning Doe because they never spoke to Doe or Doe's parents prior to filing charges.

26.   On or about December 20, 2010, Defendant Scott Crane, Superintendant of Blackfoot School District #55, appeared by telephone on national cable news network CNN and thereby sanctioned the description of events as a "horrific abuse case" and that the accused were "falsely imprisoning teammates and forcing them to perform sex acts" by offering no defense or alternative explanation to the anchor's report.

27.   Crane was in a position of manipulating public perception and knew that there was no accusation of any victim being forced to perform sex acts. The mass dissemination of false information on national television was a direct catalyst to further mischaracterization and mass hype within the local and regional community about the kind of offenses that John Doe was alleged to have committed.

28.   On or about January 5, 2011, upon request of Bingham County Prosecutor J. Scott Andrew, the magistrate judge assigned to the cases dismissed all felony charges against Chidester, Clarke, Katseanes, and Walker. The prosecution had purposely "over-charged" with felonies with insufficient factual basis to support any allegations involving sex crimes. In fact, in a media statement on or about January 6, 2011 Mr. Andrew declared that, "At the time, it was like, well, we're going to file the misdemeanors…we might as well file

these felonies."

29.   On or about January 6, 2011, Bingham County prosecutor Jared Ricks filed a Motion to Amend Juvenile Petition relating to Plaintiff John Doe providing that the purpose of the amendment was to "dismiss the charge contained in Count 7…[to] more accurately reflect the facts and nature of the incidents alleged",  which motion was granted on January 26, 2011.

30.   On or about February 3, 2011, a new case was filed against John Doe alleging a single misdemeanor count of battery. Ultimately, this new charge was dismissed during Plaintiff's evidentiary hearing after the prosecution provided that it had learned for the first time that the State had "missed the statute of limitations filing on that case." *See* Evidentiary Hearing Transcript, P.122, Ln.24 through P.123, Ln.21.

31.   On February 18, 2011, Counts 1, 4 and 5 were also dismissed upon request of the prosecutor for lack of sufficient evidence, leaving only two counts of battery in the underlying case against Plaintiff John Doe.

32.   On or about February 23, 2011, John Doe then proceeded to evidentiary hearing on the remaining two counts of battery where the State then offered just four witnesses, including a witness's mother and the high school basketball coach. The first victim could not identify when the described battery took place with sufficient particularity and placed an individual at the scene that was impossible for the person to have been there at the time.

Likewise, the second victim could not say that John Doe ever laid a hand on him. All of this testimony was available to the State at the time charges were filed and especially before hearing on the matter. The State had plenty of opportunity to, and actually did, repeatedly interview every alleged victim in its case against the Plaintiff, and yet proceeded maliciously against John Doe.

33.   On February 24, 2011, upon close of all of the evidence presented, the Court found that "the juvenile does not come within the purview of the Juvenile Corrections Act" and the final two counts of battery were found to be "Not True".

34.   At the time the initial allegations were lodged against Plaintiff John Doe at the end of 2010, he had graduated from Blackfoot High School and was attending his freshman year of college outside of Idaho. John Doe was succeeding as a college student and involved in sports and extracurricular activities. John Doe had no prior record or contact with the Juvenile Correction System. The Probation Officer's Report on Motion to Waive Jurisdiction provided that "From the information gathered the juvenile appears to be a mature individual who is attending school…and living independently."

35.   At the time charges were filed against John Doe, Defendants Bingham County and the City of Blackfoot, by and through their agents J. Scott Andrew, Randy Smith, Jared Ricks, R. David Moore, Kurt Asmus, Paul Newbold, and Justin Dance knew or should have known that there was insufficient evidence to support the filed charges. The aforementioned

Defendants intentionally filed charges, including a felony charge, against John Doe without sufficient evidence or probable cause to support those charges when time, place and identification of John Doe as a suspect to the alleged offenses had not been determined with any reasonable degree of probability.

36.   The above-named defendants all in some way contributed to the reckless and negligent investigation and prosecution, infliction of emotional distress, invasion of privacy, abuse of power, witness intimidation and tampering, misrepresentation of facts, misleading the public, breach of ethics, and other improprieties including violations of rights guaranteed under the United States Constitution.

37.   Clearly, the charges brought upon John Doe were unfounded and there were no facts to reasonably support a felony charge involving sex or sexual criminal conduct. The alleged incidents had nothing to do with the felony that John Doe was charged with.

38.   On or about May 27, 2011, a Notice of Claim for Damages under the Idaho Tort Claims Act was delivered to Defendants Blackfoot School District #55, County of Bingham, and the City of Blackfoot by hand delivery and certified mail. All tort claims were subsequently denied.

/

/

/

## COUNT ONE

### FOR MALICIOUS PROSECUTION IN VIOLATION OF 42 U.S.C. § 1983
### (Against Defendants Andrew, Smith, Ricks, Moore, Asmus, Newbold, and Dance)

39.   Plaintiff hereby repeats and realleges the allegations of all of the preceding paragraphs as though set forth herein.

40.   Jurisdiction is found in federal court pursuant to a federal claim brought under 42 U.S.C. § 1983.

41.   Defendants Andrew, Smith, Ricks, Moore, Asmus, Newbold, and Dance are "persons" as that term is defined in 42 U.S.C. § 1983 and each of them played an active role in the original case against John Doe.

42.   Beginning around September 2010, under color of state law, Defendants, and each of them acting individually and in concert, initiated and continued criminal prosecution against John Doe as set out above, including Forcible Sexual Penetration by Use of Foreign Object under Idaho Code § 18-6608, a felony punishable by up to life in prison.

43.   There was no probable cause for the filing and continuing of the misdemeanor or felony charges against John Doe. The Defendants' actions were malicious and evidenced a callous and deliberate disregard to Plaintiff's constitutional rights, including Doe's Fourth Amendment right to be free from arrest without sufficient probability of committing a crime and Fifth Amendment right to life, liberty, or property without due process of law. No

reasonable police officer or prosecutor would have filed charges against John Doe with the evidence that was known on December 1, 2010 as he could not have concluded that there was a fair probability that a crime was committed.

44.   Forcible sexual penetration by use of a foreign object is a specific intent crime requiring "the purpose of sexual arousal, gratification or abuse" and therefore the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred. *Gasho v. U.S.*, 39 F.3d 1420, 1428 (9th Cir. 1994); I.C. § 18-6608. The evidence police had as of December 1, 2010 did not surpass mere suspicion under the totality of the circumstances because it was not known with any particularity when the alleged conduct took place, whether John Doe had delivered any harmful or offensive contact, and above all, that Doe possessed the necessary intent required by statute.

45.   Further, even if the Defendants investigating and prosecuting this action had probable cause at the time the juvenile petition was filed, at some point the prosecution became vexatious after more witness interviews had been completed and exculpatory evidence had been discovered, but the prosecution still continued to press forward against John Doe.

46.   On or about December 19, 2010 Witness K.B., for example, was interviewed by Detectives Newbold and Dance and provided testimony that John Doe was actually the victim of "shooshing" on the back of a school bus, but described his understanding of being "shooshed" as giving "titty twisters"

as well as B.H.'s  genitals being grabbed on at least one occasion.

47.   Further, on or about January 5, 2011, Detective Dance provided testimony that between 15 to 20 people were interviewed (nearly all of them after charges were filed) and that descriptions of "shooshing" varied from giving someone a "dead leg" by punching their leg to "actually inserting fingers into the rectum through the clothing." Even more, Dance said some of those who were interviewed gave the impression that the shooshing was done jokingly. None of the witness accounts, however, ever associated John Doe with any sexual contact and the evidence was clear that no sex act was ever intended or committed.

48.   All of the charges against John Doe were either voluntarily dismissed by the State or were found not true at evidentiary hearing. Thus, all of the charges were terminated in favor of the Plaintiff.

49.   Defendants' conduct was reckless and malicious in that the majority of the investigation, including interviewing alleged victims, took place following the filing of charges. Defendants intentionally ignored exculpatory evidence and conflicting witness accounts, and continued the prosecution after widespread media attention was placed on the case and there was added pressure to account for the premature prosecution.

50.   Defendants, including Detectives Newbold and Dance abused their authority and position as investigators and law enforcement officers to

intimidate witnesses in an effort to force those witnesses to alter their stories and recollection of events. Further, the written reports by the detectives did not accurately reflect the witness accounts as interviewed. This callous behavior was in direct violation of Doe's Sixth Amendment right to a fair trial.

51.   As a direct and foreseeable consequence, John Doe has suffered economic loss, physical and emotional harm, loss of liberty, loss of privacy and security, and other irreparable harm manifested by emotional trauma that is likely to continue throughout John Doe's lifetime and affect his reputation and self-esteem.

52.   John Doe was further required to retain counsel to represent him in the criminal proceedings brought against him, incurred expenses associated with defending against the unlawful criminal proceedings, and now must resort to civil litigation to remedy the damage he has been caused, and should be awarded his costs and attorney's fees, pursuant to 42 U.S.C. § 1988, Idaho Code §§ 12-120, 12-121, I.R.C.P. 54, etc. and pursuant to any other law or rule.

**COUNT TWO**

**MAKING FALSE PUBLIC STATMENTS IN VIOLATION OF**

**42 U.S.C. § 1983**

**(Against Defendants Smith, Moore, and Asmus)**

53.   Plaintiff hereby repeats and realleges the allegations of all of the preceding paragraphs as though set forth herein.

54.   Jurisdiction is found in federal court pursuant to a federal claim

brought under 42 U.S.C. § 1983.

55.   Defendants Smith, Moore, and Asmus are "persons" as that term is defined in 42 U.S.C. § 1983.

56.   That beginning on or about December 7, 2010, Defendants Smith, Moore, and Asmus made various public statements that were of and concerning John Doe and the investigation and prosecution of the alleged offenses that misrepresented the facts.

57.   Defendants made their respective statements under color of law.

58.   Deputy Prosecutor Randy Smith stated to local media that "A lot of others came forward after that investigation started, after we started learning who was involved." This statement was false and intentionally deceptive.

59.   On or about December 15, 2010 Police Chief Moore reported to news outlets that "a significant amount" of victims had come forward. Further, Moore stated, "It became apparent to some other students that, 'Wow, maybe I am not the only one,' and they came forward."

60.   Similarly deceptive, on or about December 16, 2010, Police Captain Kurt Asmus publicly stated that law enforcement officials had contacted additional victims since charges were filed earlier this month based on allegations made by four people. Further providing, "It has mushroomed from there…now that everything is out, more victims are coming forward because they realize they are not alone and they don't need to be afraid or

embarrassed."

61.   Defendants' false statements were made in direct connection with John Doe's unconstitutional prosecution and made with malicious intent or with reckless disregard to the fairness of subsequent judicial proceedings.

62.   Such statements were inflammatory in nature and misled the public regarding the case against John Doe and the other former students and subjected John Doe to undue public humiliation.

63.   Defendants' actions evidenced a reckless and callous disregard for, and deliberate indifference to, John Doe's constitutional rights, including his Sixth Amendment right to a fair trial.

## COUNT THREE
### VIOLATIONS OF 42 U.S.C. § 1983
*Monell V. Dep't of Social Servs.*, **436 U.S. 658 (1977)**

**(Against the supervisory defendants in their official capacities, with respect to Bingham County and the City of Blackfoot, Scott Andrew in his official capacity, R. David Moore in his official capacity)**

64.   Plaintiff hereby repeats and realleges the allegations of all of the preceding paragraphs as though set forth herein.

65.   Supervisory Defendants Bingham County, City of Blackfoot, Andrew, and Moore are "persons" as defined in 42 U.S.C. § 1983.

66.   Officials with final policymaking authority for Bingham County, the City of Blackfoot approved the unconstitutional conduct of their subordinates.

67.   Prior to and at the time of filing of the charges, upon information and belief, the Supervisory Defendants and other officials at Bingham County and the City of Blackfoot, having final policymaking authority for the Bingham County Prosecutor's Office, Bingham County Sheriff's Office, and the Blackfoot Police Department, respectively, had contemporaneous knowledge through the chain of command that investigators and other police officers were conducting procedures that violated constitutional standards by supplying prosecutors with inaccurate police reports, intimidating witnesses who had information about John Doe's innocence, concealing evidence of John Doe's innocence, and making false public statements regarding John Doe.

68.   It would have been plainly obvious to a reasonable policymaker that such conduct would lead to deprivations of John Doe's constitutional rights.

69.   Upon information and belief, the Supervisory Defendants and other officials in Bingham County and the City of Blackfoot nevertheless agreed to, approved, and ratified this unconstitutional conduct by Andrew, Moore, and their subordinates.

70.   Officials with final policymaking authority failed to exercise adequate supervisory responsibility over Defendants Smith, Ricks, Asmus, Newbold, and Dance.

71.   As a direct and foreseeable consequence of these policy decisions, Plaintiff John Doe was deprived of his rights under the Fourth and Fourteenth

Amendments to the United States Constitution.

## COUNT FOUR
## CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1983
## (WITNESS INTIMIDATION)

**(Against Defendants Andrew, Smith, Ricks, Moore, Newbold, and Dance)**

72.   Plaintiff hereby repeats and realleges the allegations of all of the preceding paragraphs as though set forth herein.

73.   Defendants Andrew, Smith, Moore and Newbold are "persons" as that term is used in 42 U.S.C. § 1985.

74.   That beginning on or about September 22, 2010, under color of law, Defendants conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of deterring witnesses by intimidation and threat from testifying freely, fully, and truthfully to matters that these Defendants knew were, or would be, pending herein.

75.   Defendants' actions evidenced a reckless and callous disregard for, and deliberate indifference to, John Doe's constitutional rights including probable cause to arrest and the right to a fair trial.

76.   As a direct and foreseeable consequence of this conspiracy, Plaintiff John Doe was deprived of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

## COUNT FIVE

## OBSTRUCTION OF JUSTICE

### (Against Defendants Andrew, Smith, Ricks, Moore, Asmus, Newbold, and Dance)

77.   Plaintiff hereby repeats and realleges the allegations of all of the preceding paragraphs as though set forth herein.

78.   Jurisdiction is found in federal court pursuant to 28 U.S.C. § 1367 as a supplement to the other related claims in the action within such original jurisdiction as they form part of the same case and controversy under Article III of the United States Constitution.

79.   Beginning on or about September 22, 2010, Defendants acting individually and in concert, engaged in acts that attempted to and did conceal, alter, and misrepresent evidence, with the intent to prevent, obstruct, impede, and hinder public and legal justice in the State of Idaho.

80.   Defendants engaged in the obstruction of justice by manufacturing false and misleading investigative reports with the knowledge that these reports would be used to advance and perpetuate the criminal process against John Doe, including specifically for example, those investigative notes written to reflect witness interviews like that of S.C.'s November 9, 2010 interview.

81.   As a direct and foreseeable consequence of Defendants' conduct, John Doe was unreasonably and unlawfully subjected to wrongful and malicious prosecution.

82.   As a direct and foreseeable consequence, John Doe has suffered economic loss, physical and emotional harm, loss of liberty, loss of privacy and security, and other irreparable harm manifested by emotional trauma that is likely to continue throughout John Doe's lifetime and affect his reputation and self-esteem.

## COUNT SIX

### NEGLIGENT SUPERVISION, HIRING, TRAINING, AND DISCIPLINE
**(Against Supervisory Defendants Blackfoot School District #55, Crane, McInelly, Bingham County, City of Blackfoot, Andrew, and Moore)**

83.   Plaintiff hereby repeats and realleges the allegations of all of the preceding paragraphs as though set forth herein.

84.   At the time of the events alleged above, the Supervisory Defendants Blackfoot School District #55, Crane, McInelly, Bingham County, City of Blackfoot, Andrew, and Moore owed Plaintiff John Doe a duty to use due care in the hiring, training, supervision, and discipline of personnel, including personnel involved in administering institutional policy and the investigation of the described charges.

85.   The Supervisory Defendants negligently supervised their insubordinate personnel by failing to provide them with the proper training, and failed to outline the proper procedure to them in various respects relating to the appropriate conduct of reporting suspicious behavior and instituting criminal investigations, including by way of:

a.   The appropriate chain of command in criminal investigations;

b.   The prohibiting of threats, inducements, or intimidation of

witnesses;

c.   The issuance of public statements relating to an open investigation;

d.   The standards for police reports, investigator's notes, and other

reports of investigations, including the timely and truthful

preparation of such documents;

e.   The standards for probable cause; and

f.   Following institutional policies, codes of conduct and customary

practices.

86.   In committing the aforementioned acts or omissions, the

Supervisory Defendants Blackfoot School District #55, Crane, McInelly,

Bingham County, City of Blackfoot, Andrew, and Moore negligently breached

said duty to use due care, which directly and proximately resulted in the

injuries and damages to John Doe as alleged herein.

## COUNT SEVEN

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Against Defendants Andrew, Smith, Ricks, Moore, Asmus, Newbold, and
Dance)**

87.   Plaintiff hereby repeats and realleges the allegations of all of the

preceding paragraphs as though set forth herein.

88.   Jurisdiction is found in federal court pursuant to 28 U.S.C. § 1367 as

FIRST AMENDED COMPLAINT          -22-          Doe v. Blackfoot School Dist. #55 *et al.*

a supplement to the other related claims in the action within such original

jurisdiction as they form part of the same case and controversy under Article III

of the United States Constitution.

89.  That beginning as early as June 2010, Defendants acted individually

and in concert to manufacture evidence and conceal exculpatory evidence for

the purpose of perpetuating a criminal action against John Doe when ultimately

misdemeanor and felony charges were lodged against John Doe without

probable cause and with knowledge of insufficient facts to support the

allegations asserted, and which indictment was calculated to humiliate, shame

and create public condemnation for John Doe and the other former high school

students that were similarly charged.

90.  In concert with the above-mentioned conduct, the Defendants'

actions evidenced a pattern of extreme and outrageous behavior pursued with

the intent or recklessness which caused John Doe to suffer severe emotional

distress.

91.  The above-named Defendants have a track record of pursuing

charges in the absence of adequate investigation and without probable cause to

support the filed charges, including the other high school "hazing" cases.

92.  Defendants' conduct had the direct and foreseeable consequence of

painting John Doe as a violent criminal and sex offender, as false and

misleading statements were knowingly and with reckless disregard published

to local and even national and international news outlets. As a direct result, John Doe actually did suffer severe emotional distress of which physical manifestations of injury were present in the form of loss of sleep, headaches, stomach aches, severe depression, and thoughts of suicide.

93.   Despite John Doe's exoneration, Defendants' conduct will likely continue to have deleterious effects on John Doe, who will be forever associated with the false allegations advanced against him.

## COUNT EIGHT
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against all Defendants)

94.   Plaintiff hereby repeats and realleges the allegations of all of the preceding paragraphs as though set forth herein.

95.   Jurisdiction is found in federal court pursuant to 28 U.S.C. § 1367 as a supplement to the other related claims in the action within such original jurisdiction as they form part of the same case and controversy under Article III of the United States Constitution.

96.   All of the defendants' wrongful conduct as described in all of the previous claims for relief, including Count Seven, was at least grossly negligent and reckless with regard to John Doe's emotional state. The defendants failed to exercise due care in discharging their duties and caused John Doe serious emotional distress, manifested by the injuries previously mentioned.

97.   The Plaintiff is entitled to judicial remedy for the damages he has been caused.

## ATTORNEY FEES

98.   Plaintiffs are entitled to reasonable attorney fees in an amount to be determined by the court pursuant to 42 U.S.C. § 1988, I.C. §§ 12-120, 12-121, I.R.C.P. 54, etc. and any other relevant authority.

## PRAYER FOR RELIEF

99.   Based upon the foregoing allegations and points of law, the Plaintiff respectfully requests the following relief from this Honorable Court:

a.   Damages, an amount to be established at trial, as compensation for injuries to reputation, emotional suffering, past and future economic losses, invasion of privacy, constitutional deprivations, loss of future career prospects, legal and other expenses, and  other injuries proximately caused and enhanced by defendants' wrongful conduct;

b.   An award of attorney's fees and costs, including attorney's fees pursuant to 42 U.S.C. § 1988, I.C. §§ 12-120, 12-121, I.R.C.P. 54, etc. and pursuant to any other law or rule.

## DEMAND FOR JURY TRIAL

100.   Plaintiff hereby demands trial of this matter by jury pursuant to Fed. R. Civ. P. 38.

DATED this <u>22nd</u> day of January, 2013.

Respectfully Submitted,

/s/ Dustin W. Manwaring
_____
Dustin W. Manwaring (#8648)
MILESTONE LAW FIRM
1469 W. Quinn Road
Pocatello, ID 83202
Tel: 208.252.5295
Fax: 858.228.1776
dustin@milestonelaw.com

Attorney for Plaintiff