IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN DOE, an individual formerly under 18 Years of Age,<br><br>                Plaintiff,<br><br>v.<br><br>BLACKFOOT SCHOOL DISTRICT #55, a political subdivision, et al.,<br><br>                Defendants. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br>Case No. 4:12-CV-589 BLW |

This matter is before the Court on Motions for Summary Judgment filed by Defendants Bingham County, J. Scott Andrew, Randy W. Smith, and Jared Ricks (the "County Defendants") and City of Blackfoot, R. David Moore, Kurt Asmus, Paul Newbold, and Justin Dance (the "City Defendants").[1] Also before the Court is Plaintiff's Motion for Protective Order. For the reasons discussed below, the Court will grant Defendants' Motions for Summary Judgment and deny Plaintiff's Motion for Protective Order.

I. BACKGROUND

In the fall of 2010, the Blackfoot City Police Department began investigating incidents of hazing, including an activity called "shushing." The record contains various descriptions of shushing. Generally, the activity involves a group of individuals holding someone down while one or more individuals touch the victim's genitals and/or insert their finger into the victim's anus through the victim's clothing.

---

[1] Plaintiff has voluntarily dismissed the remaining Defendants (Blackfoot School District #55, Scott Crane, and Blaine McInelly). See Docket No. 21.

Detectives Newbold and Dance were the officers primarily involved in the investigation of these incidents. During interviews with these officers, various individuals identified Plaintiff, among others, as having been involved in shushing. Specifically, two victims—B.H. and S.C.—stated that they were restrained while another individual or individuals touched them inappropriately. B.H. stated that Plaintiff participated in an incident where B.H. was held down and fingers were inserted into his anus through his clothing. Both B.H. and S.C. identified Plaintiff as being among the group of individuals involved in the hazing, though they could not identify the specific role Plaintiff played.

On December 1, 2010, Defendant Newbold submitted an Officer Probable Cause Statement. In the Officer Probable Cause Statement, Defendant Newbold stated that Plaintiff "assisted to force down a juvenile male and restrict his freedom while himself and other adult males inserted their fingers, through the clothing into the juvenile males anal opening. Insertion was made into the anal opening."[2]

On or about December 2, 2010, Defendant Ricks, a Deputy County Prosecutor, filed a Juvenile Petition in the District Court of the Seventh Judicial District of the State of Idaho, alleging the following offenses had been committed: battery (three counts), false imprisonment (three counts), and principal to a felony (forcible sexual penetration by use of a foreign object).[3]

---

[2] Docket No. 26, Aff. of Paul Newbold, Ex. A, Officer Probable Cause Statement.

[3] Idaho law classifies parties to a crime as principals and accessories. Idaho Code Ann. § 18-203. "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, or, not being present, have advised and encouraged its commission, or who, by fraud, contrivance, or force, occasion the intoxication of another for the purpose of causing him to commit any crime, or who, by threats, menaces, command or coercion, compel another to commit any crime, are principals in any crime so committed." *Id.* § 18-204.

Prior to trial, it became clear that the victims could not specifically identify Plaintiff as one of the individuals who had penetrated their rectums. Therefore, the single felony count of sexual penetration was dismissed. An Amended Juvenile Petition was filed, charging two counts of battery.

Trial commenced on the battery charges on February 23, 2011. At the end of the trial, the juvenile court judge stated that there was sufficient evidence to find that the two victims were attacked, but that he could not determine who had perpetrated the attack. Because Plaintiff was not charged as a principal, the charges against him were dismissed.

Plaintiff filed this action on December 3, 2012. Plaintiff asserts claims for malicious prosecution; making false public statements; supervisory and municipal liability; negligent supervision, hiring, training, and discipline; intentional infliction of emotional distress; and negligent infliction of emotional distress. Plaintiff had asserted claims for conspiracy and obstruction of justice, but has since conceded these claims.[4] Defendants seek summary judgment on all claims.

## II. MOTION FOR PROTECTIVE ORDER

The Court first considers Plaintiff's Motion for Protective Order. Through his Motion, Plaintiff seeks to have certain documents sealed. Plaintiff argues that by filing certain documents publicly, Defendants have revealed his true identity and, because he is using the pseudonym John Doe, these documents should be removed from public view. Though he has not moved for such relief, the purpose of Plaintiff's Motion is to allow him to use the pseudonym "John Doe."

---

[4] Docket No. 29, at 3; Docket No. 35, at 3.

Federal Rule of Civil Procedure 10(a) states that "[t]he title of the complaint must name all the parties." Similarly, Rule 17(a) provides that "[a]n action must be prosecuted in the name of the real party in interest." However, "many federal courts, including the Ninth Circuit, have permitted parties to proceed anonymously when special circumstances justify secrecy."[5]

In the Ninth Circuit, parties are permitted to proceed anonymously only "in the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment.'"[6] "[A] party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity."[7] In making this determination, the Court must balance the following factors: (1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, (3) the anonymous party's vulnerability to such retaliation, (4) the prejudice to the opposing party, and (5) the public interest.[8]

Considering these factors, the Court finds that the need for anonymity does not outweigh the prejudice to Defendants and the public's interest in knowing Plaintiff's identity. First, there does not appear to be any threatened harm if Plaintiff were to reveal his identity. While Plaintiff argues that he has suffered mental anguish and embarrassment in the community as a result of the charges that provide the basis for this lawsuit, Plaintiff undermines his argument in support

---

[5] *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000).

[6] *Id.* at 1067–68 (quoting *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)).

[7] *Id.* at 1068.

[8] *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010).

of anonymity by arguing that those in the community know that he was accused. Plaintiff further states that the juvenile case is not sealed and the record of the charges against him can be accessed by searching his name. Additionally, Plaintiff has voluntarily disclosed his identity to Defendants. Plaintiff has failed to point to anything suggesting that Defendants—who are well aware of his identity—or others, have retaliated against him.[9]

Second, and for substantially the same reasons, Plaintiff's fears are not reasonable. The relevant determination under this factor is whether Plaintiff was threatened and whether "a reasonable person would believe that the threat might actually be carried out."[10] There is no evidence to show that Plaintiff was threatened.

Third, there is no evidence that Plaintiff is particularly vulnerable to retaliation. While Plaintiff was a juvenile when most of the events at issue occurred, he is now an adult. Further, it appears that Plaintiff has moved away from the community where the events and underlying prosecution took place.

Fourth, there is no real prejudice to Defendants here because Plaintiff has revealed his identity to them. However, the fact that Plaintiff has made a selective disclosure of his identity militates against Plaintiff's request to use a pseudonym.

---

[9] *See Advanced Textile Corp.*, 214 F.3d at 1070 ("[T]his court and others have concealed parties' identities in order to protect them from retaliation by third parties and also to protect nonparties from reprisals.").

[10] *Id.*

Finally, the public has an interest in Plaintiff's identity being revealed. As the Ninth Circuit has explained, a plaintiff's "use of fictitious names runs afoul of the public's common law right of access to judicial proceedings."[11]

Based on the review of these factors, the Court will not permit Plaintiff to proceed using a pseudonym. As Plaintiff has pointed to no other reason to seal the records at issue, Plaintiff's Motion for Protective Order will be denied.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[13] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[14]

## IV. DISCUSSION

A. REAL PARTY IN INTEREST

Defendants argue that this case should be dismissed because Plaintiff has failed to appropriately name a real party in interest. As discussed above, the Court will not permit Plaintiff to proceed under the pseudonym "John Doe." However, that does not mean that this action must be dismissed. Rather, Plaintiff would ordinarily be given the opportunity to amend

---

[11] *Id.* at 1067.

[12] Fed. R. Civ. P. 56(a).

[13] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[14] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

his Complaint to reveal his identity. However, amendment is not necessary in this case because Defendants are entitled to summary judgment as will be discussed below.

B.    STATUTE OF LIMITATIONS

Defendants next argue that all of Plaintiff's claims are barred by the relevant statute of limitations. The parties agree that Plaintiff's claims are subject to a two-year statute of limitations.[15] Though subject to the same limitations period, Plaintiff's claims begin to accrue at different times. Thus, the Court must separately consider the statute of limitations applicable to Plaintiff's two substantive federal claims: malicious prosecution and false public statements.

The Ninth Circuit has held that "[a] malicious prosecution cause of action does not accrue until the case has been terminated in the favor of the accused."[16] The state court case against Plaintiff was terminated in his favor on February 24, 2011. Plaintiff had two years from that date to bring this suit. As stated, Plaintiff brought this action on December 2, 2012, within the two year limitations period. Therefore, Plaintiff's claim for malicious prosecution is not barred by the statute of limitations. To the extent that Plaintiff's claims for supervisory and municipal liability are based on his malicious prosecution claim, they are similarly not barred by the statute of limitations.

Plaintiff's false public statement claim arises from statements made between December 7, 2010, and December 16, 2010.[17] Because Plaintiff brought his initial Complaint on December 3,

---

[15] Idaho Code § 5-219; *Wilson v. Garcia*, 471 U.S. 261, 280 (1985).

[16] *Cline v. Brusett*, 661 F.2d 108, 110 (9th Cir. 1981); *see also Heck v. Humphrey*, 512 U.S. 477, 486–87, 489 (1994).

[17] Docket No. 3 ¶¶ 56–60.

2012, this claim is also timely. Therefore, the Court must reject Defendants' statute of limitations argument.

C. MALICIOUS PROSECUTION

   *1. Prosecutors Andrew, Smith, and Ricks*

Defendants Andrew, Smith, and Ricks argue that they are entitled to absolute immunity or, in the alternative, are entitled to qualified immunity from Plaintiff's malicious prosecution claim. Plaintiff argues that Defendants Smith and Rick are not entitled to immunity, apparently conceding that Defendant Andrew is entitled to either absolute or qualified immunity.

"A state prosecuting attorney enjoys absolute immunity from liability under § 1983 for his conduct in 'pursuing a criminal prosecution' insofar as he acts within his role as an 'advocate for the State' and his actions are 'intimately associated with the judicial phase of the criminal process.'"[18] "However, prosecutors are entitled to only qualified immunity 'when they perform investigatory or administrative functions, or are essentially functioning as police officers or detectives.'"[19]

"[T]he distinction between the roles of 'prosecutor' and 'investigator' is not always clear."[20] "To determine whether an action is judicial, investigative, or administrative, we look at 'the nature of the function performed, not the identity of the actor who performed it.'"[21] "The Supreme Court has held that absolute immunity protects a prosecutor who is appearing in court

---

[18] *Cousins v. Lockyer*, 568 F.3d 1063, 1068 (9th Cir. 2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410, 430–31 (1976)).

[19] *Waggy v. Spokane Cnty. Wash.*, 594 F.3d 707, 710–11 (9th Cir. 2010) (quoting *al-Kidd v. Ashcroft*, 580 F.3d 949, 958 (9th Cir. 2009)).

[20] *al-Kidd*, 580 F.3d at 958.

[21] *Cousins*, 568 F.3d at 1068 (quoting *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)).

8

in support of a warrant application, presenting evidence at a hearing, or preparing for either the initiation of judicial proceedings or trial."[22]

At all relevant times, Defendant Andrew was the county attorney for Bingham County. As such, he was responsible for the hiring and training of deputy county attorneys. Defendant Andrew has submitted an affidavit stating that he was not involved in the investigation of Plaintiff's case, either before or after charges were filed. Defendant Andrew did not instruct Defendants Smith or Ricks as to what charges to file, but was provided updates concerning the case. Defendant Andrew's only involvement in the case concerned the dismissal of the felony charge against Plaintiff. Based upon this evidence, the Court finds that Defendant Andrew is entitled to absolute immunity from Plaintiff's malicious prosecution claim. Plaintiff has provided no evidence or argument that Defendant Andrew is somehow not entitled to immunity.

Defendant Ricks was the deputy county attorney responsible for the prosecution of Plaintiff. While Defendant Ricks discussed the case, specifically the felony charge, with Defendant Smith, Defendant Ricks has provided evidence that he alone made the charging decision. There is evidence that, after the charges were filed, Defendant Smith and Ricks attended interviews with the victims. There is also evidence that Defendant Smith engaged in discussions with one of the victim's parents, again after the charges were filed. The Court must consider whether these activities stripped Defendants of their absolute immunity.

Plaintiff argues that Defendants Smith and Ricks lost their absolute immunity by performing investigatory roles and assisting in the collection of new evidence against Plaintiff. The only evidence concerning Defendant Ricks is that he was present during the interview of one

---

[22] *Waggy*, 594 F.3d at 711.

of the victims.[23] This interview occurred after charges were filed. Defendant Ricks has provided an affidavit stating that "[p]rior to the charging decision being made, I conducted no investigation or witness interviews in this matter. I did not meet with or interview any witnesses prior to the charging decision being made."[24] Further, while Defendant Ricks admitted that he met several witnesses in preparation for trial, he "was careful not to conduct an interview."[25] There is no evidence to the contrary. The Supreme Court has made clear that "evaluating evidence and interviewing witnesses" in preparation for trial are acts protected by absolute immunity. Therefore, based on the evidence presented, the Court finds that Defendant Ricks is entitled to absolute immunity.

Defendant Smith was also present during certain interviews and has testified that he spoke with one of the victims and the victim's parents. These discussions similarly occurred after the charges against Plaintiff were filed. Like Defendant Ricks, Defendant Smith has provided an affidavit stating that he did not conduct any investigation or interview any witnesses prior to the charging decision being made. Defendant Smith does state that he met with witnesses in preparation for trial. But again, such action is entitled to absolute immunity. Therefore, the Court finds that Defendant Smith is also entitled to absolute immunity.

In the event they are not entitled to absolute immunity, Defendants also argue they are entitled to qualified immunity. Plaintiff argues that Defendants are not entitled to qualified immunity because they failed to raise that defense earlier in these proceedings.

---

[23] Docket No. 31 Ex. F.

[24] Docket No. 22-4 ¶ 7.

[25] *Id.*

The Supreme Court has held that "[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."[26] There may be circumstances where the defense of qualified immunity may be waived for failure to raise it in a timely fashion.[27] This, however, is not such a case. Defendants asserted the defense of qualified immunity in their Answer.[28] Further, Defendants waited to assert qualified immunity until summary judgment because it was clear, as is evident from the briefing, that discovery was required to properly address the issue of qualified immunity. Therefore, the Court finds that Defendants timely asserted qualified immunity.

"The doctrine of qualified immunity shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law."[29] Once a defendant pleads qualified immunity as a defense, the plaintiff must show: (1) that the defendant's actions violated a constitutional or statutory right, and (2) that the rights alleged to be violated were clearly established at the time of the conduct at issue.[30]

---

[26] *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

[27] *See Lord-Butcher v. City of Newport Beach*, 79 F.3d 1153, at *2 (9th Cir. 1996) (unpublished decision) (finding that defendant waived qualified immunity by failing to raise defense until motion hearing after both sides rested their case).

[28] Docket No. 14 ¶ 12.

[29] *Elder v. Holloway*, 510 U.S. 510, 512 (1994).

[30] *Saucier*, 533 U.S. at 201.

To maintain a § 1983 claim of malicious prosecution, a plaintiff must show that "the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right."[31]

Plaintiff was initially charged with battery, false imprisonment, and principal to a felony (forcible sexual penetration by use of a foreign object). In this case, the prosecutors were presented with statements from victims who stated that they were held down while one or more individuals touched them inappropriately. One of the victims specifically stated that fingers were inserted into his anus through is clothing. The victims identified Plaintiff as being involved with these incidents. Based upon this evidence, the Court finds that the prosecutors had sufficient probable cause to bring charges against Plaintiff. As a result, Defendants are entitled to qualified immunity.

### 2. Officers

Defendants Moore, Asmus, Newbold, and Dance also argue that they are entitled to qualified immunity on Plaintiff's malicious prosecution claim.

As stated, to maintain a § 1983 claim of malicious prosecution, a plaintiff must show that "the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right."[32] These elements will be discussed below.

---

[31] *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).

[32] *Id.* at 1189.

### a. Probable Cause

As stated, Plaintiff was initially charged with battery, false imprisonment, and principal to a felony (forcible sexual penetration by use of a foreign object). Plaintiff's argument as to these Defendants focuses on the forcible sexual penetration charge.

Plaintiff argues that Defendants Newbold and Dance knew or should have known that there was a lack of probable cause to support this charge. Specifically, Plaintiff argues that these Defendants "disregarded the requirement of establishing specific intent to commit a sex act under Idaho Code § 18-6608 and that a person's anus must have actually been *penetrated*."[33]

This argument, however, ignores the evidence. There is evidence that the officers were informed that Plaintiff was involved in "shushing." At least one victim specifically stated that his anus was penetrated. This information was then turned over to the prosecutors who, as discussed above, made the decision to charge Plaintiff.

Plaintiff makes much of the fact that Defendant Newbold testified that he questioned Defendant Smith about the charges that were going to be filed. Defendant Newbold stated that, when learning about the charges to be filed, he "didn't get where Randy [Smith] was coming from" on the penetration charge.[34] Defendant Newbold testified that, based on his understanding of the statute, he did not "think we could do it."[35] However, he acknowledged that it was the prosecutor who made the decision on "what charges are to be filed."[36] While this provides some support for Plaintiff's argument, ultimately there was sufficient evidence to support a finding of

---

[33] Docket No. 35, at 6–7.

[34] Docket No. 37 Ex. I, at 62:24–25.

[35] *Id*. at 64:20–21.

[36] *Id*. at 65:8–9.

probable cause. Further, as will be discussed below, the fact that the prosecutor independently made the decision to charge Plaintiff insulates the officers from liability.

   b. *Malice*

Plaintiff argues that malice can be inferred from a lack of probable cause. Plaintiff, however, offers no actual evidence of malice. Since there is sufficient evidence to support a finding of probable cause, there is no evidence of malice.

   c. *Constitutional Right*

The specific constitutional right that Plaintiff claims Defendants have violated is unclear. In his First Amended Complaint, Plaintiff alleges that these Defendants violated his Sixth Amendment right to a fair trial. However, Plaintiff does not expand on this in the summary judgment briefing. Nor is there any evidence that the actions of these Defendants somehow deprived Plaintiff of his Sixth Amendment rights. The evidence seems to suggest just the opposite. Plaintiff was charged and given an opportunity to contest those charges in court. Plaintiff ultimately prevailed and the charges against him were dismissed.

Plaintiff does argue that Defendants Smith and Rick violated his Fourth Amendment rights, but he does not argue that Defendants Moore, Asmus, Newbold, and Dance did so. Therefore, this claim fails.

Even if Plaintiff did point to a constitutional right that Defendants allegedly violated, "the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings."[37] "However, the

---

[37] *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004).

presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings."[38]

In this case, there is no evidence that Defendants Moore, Asmus, Newbold, and Dance improperly exerted pressure on the prosecutors, knowingly provided false information, concealed exculpatory evidence, or otherwise engaged in any wrongful or bad faith conduct. Plaintiff's argument seems to be that these officers knew that there was a lack of probable cause when Plaintiff was charged. However, it is undisputed that the prosecutors made the charging decisions independently from the officers. Thus, these Defendants are entitled to qualified immunity.

D. FALSE PUBLIC STATEMENTS

Plaintiff next brings a claim under § 1983 for making false public statements. Though less than clear, it appears that Plaintiff is asserting a "defamation-plus" claim and the Court will construe it as such.

In *Paul v. Davis*,[39] the Supreme Court "held that injury to reputation is not a liberty or property interest protected by the due process clause of the Fourteenth Amendment, and therefore this injury alone does not present an actionable claim under section 1983."[40] "To state a claim for defamation under section 1983, a plaintiff must allege loss of a recognizable property

---

[38] *Id.*

[39] 424 U.S. 693 (1976).

[40] *Cooper v. Dupnik*, 924 F.2d 1520, 1532 (9th Cir. 1991) (citing *Paul*, 424 U.S. at 703).

15

or liberty interest in conjunction with the allegation of injury to reputation."[41] "There are two ways to state a cognizable § 1983 claim for defamation-plus: (1) allege that the injury to reputation was inflicted in connection with a federally protected right; or (2) allege that the injury to reputation caused the denial of a federally protected right."[42]

In his Complaint, Plaintiff points to statements from Defendants Smith, Moore, and Asmus. These statements, though slightly different, all refer to a number of victims coming forward after the investigation started. Plaintiff argues that these statements are false because victims did not come forward but were rather approached by officers. This semantic argument cannot support a defamation-plus claim. Further, none of these statements contain any defamatory information concerning Plaintiff. Indeed, Plaintiff acknowledged in his depositions that there were no statements that mentioned him by name.[43] So even if these statements were false, they are not defamatory. Since the statements are not defamatory, Plaintiff's defamation-plus claim must fail.[44]

In his opposition to Defendants' Motions for Summary Judgment, Plaintiff relies on another statement made by Defendant Smith that "a lot of the school knows these guys were bullies."[45] This statement, like the other statements, does not mention Plaintiff directly. Plaintiff wants the Court to assume that this statement concerns him, but it could have easily been referring to the other individuals allegedly involved in shushing incidents.

---

[41] *Id.*

[42] *Herb Hallman Chevrolet, Inc. v. Nash-Holmes*, 169 F.3d 636, 645 (9th Cir. 1999).

[43] Docket No. 25 Ex. A, at 120:3–21.

[44] *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 444 (9th Cir. 2010).

[45] Docket No. 37 Ex. R.

Even if this statement could be considered defamatory, Plaintiff's claim still fails. As stated, Plaintiff must show that the injury to reputation was inflicted in connection with a federally protected right or caused the denial of a federally protect right. Plaintiff argues that Defendant Smith's statement interfered with Plaintiff's criminal case. However, Plaintiff does not elaborate as to how or why this statement interfered with his case. Further, Plaintiff has provided no evidence that it did so. Therefore, Defendants are entitled to summary judgment on this claim.

E.     SUPERVISORY AND MUNICIPAL LIABILITY

Plaintiff asserts claims of supervisory/municipal liability against Defendants Bingham County, City of Blackfoot, Scott Andrew, and R. David Moore. Each of these Defendants moved for summary judgment. Plaintiff has only argued that Defendant Andrew is liable under a supervisory/municipal liability theory. Thus, it appears that Plaintiff has conceded these claims against all Defendants except for Defendant Andrew.

"Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability."[46] "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"[47] "Supervisory liability exists even without overt personal participation in the offensive act if

---

[46] *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989).

[47] *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012) (quoting *Hansen*, 885 F.2d at 646).

17

supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of a constitutional violation.'"[48]

Plaintiff argues that Defendant Andrew should be held liable for "establishing a pattern, custom, and practice whereby prosecutors participated in law enforcement activities . . . and charg[ed] defendants in the absence of probable cause and by failing to provide adequate training, supervision, procedures, guidance, rules, and regulations that would prevent such conduct."[49] To support this claim, Plaintiff points out that the Bingham County Attorney's Office dismissed first-degree murder charges against two individuals and empanelled grand juries to pursue cases.

There is no evidence that these cases involved a lack of probable cause or alleged attorney misconduct. The only evidence on this issue comes from the Second Affidavit of J. Scott Andrew.[50] In that Affidavit, Andrew describes the circumstances surrounding these cases and states that neither case was dismissed for a lack of probable cause. Plaintiff has produced no evidence to the contrary. As a result, Plaintiff has pointed to no custom or policy implemented by Defendant Andrew that would support a claim against him or the County. Therefore, summary judgment is appropriate on these claims.

F.   NEGLIGENT SUPERVISION, HIRING, TRAINING, AND DISCIPLINE

Plaintiff asserts claims for negligent supervision, hiring, training, and discipline against Defendants Bingham County, City of Blackfoot, Andrew, and Moore. It is unclear whether

---

[48] *Hansen*, 885 F.2d at 646 (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)).

[49] Docket No. 29, at 15.

[50] Docket No. 39-1, Second Aff. of J. Scott Andrew.

Plaintiff is attempting to bring these claims under § 1983 or whether he is asserting claims under state law.

To the extent that Plaintiff attempts to bring these claims under § 1983, they fail. In order to prevail on a § 1983 claim, Plaintiff must show deliberate indifference; mere negligence is not enough.[51] To the extent Plaintiff is bringing these claims under state law, the Court will dismiss them without prejudice for the reasons provided below.

G. STATE LAW CLAIMS

In addition to the above-listed claims, Plaintiff brings claims for intentional infliction of emotional distress and negligent infliction of emotional distress.

"A district court's exercise of pendent jurisdiction over state law claims arising from the same set of operative facts that supports a federal claim is a matter of discretion."[52] "When, as here, the court dismisses the federal claim leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice."[53] Having considered the values "of economy, convenience, fairness, and comity" the Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining claims.[54]

V. CONCLUSION

It is therefore

ORDERED that Defendants' Motions for Summary Judgment (Docket Nos. 22 and 24) are GRANTED as set forth above. It is further

---

[51] *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989).

[52] *Les Shockley Racing, Inc. v. Nat'l Hot Rod Assn.*, 884 F.2d 504, 509 (9th Cir. 1989).

[53] *Id.*; *see also* 28 U.S.C. § 1367(c).

[54] *Exec. Software v. U.S. District Court*, 24 F.3d 1545, 1557 (9th Cir. 1994).

ORDERED that Plaintiff's Motion for Protective Order (Docket No. 32) is DENIED.

The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff on all of Plaintiff's claims arising under federal law. Plaintiff's state law claims are dismissed without prejudice.

The Clerk of the Court is directed to close this case forthwith.

DATED this 28th day of February, 2014.

BY THE COURT:

_____
Ted Stewart
United States District Judge